Our 8th case for today, it's still morning, is United States v. Martinez. Mr. Henderson. Good morning. May it please the Court. I'm Peter Henderson. I represent Michael Martinez. We feel the District Court made a number of mistakes at sentencing with regard to, especially revolving around the issue of rehabilitation and what Mr. Martinez needs. The most legalistic mistake, I think, is this misapprehension of Mr. Martinez's eligibility for a reduced sentence should he continue to comply and continue to seek rehabilitation in the Bureau of Prisons. I think everybody agrees that was a mistake, but what the government has argued is that the district judge, by the time he made that mistake, had already done everything. He had pronounced the sentence. He had given his reasons. There's no reason to believe that his misapprehension about the RDAP program had anything to do with the sentence. Well, I think that it does show what the judge was considering. A big piece of the consideration at sentencing was on rehabilitation, was about drug abuse, was about mental health, was about whether we can fix these sorts of issues in the Federal Bureau of Prisons, because Illinois didn't, or whether we just need to incarcerate this person for as long as we can. And so certainly the comment comes after the pronouncement of sentence, but I think it illustrates what was at least in the back of the judge's mind as to Mr. Martinez's eligibility for this program. But isn't your position much better if Judge Chang had said something like, look, I think 105 is a good number here. That's a fair number to achieve all the objectives of sentencing, and I'm actually going to leave 12 months of it up to you, Mr. Martinez. I'm going to leave it in your hands. Get into the drug program and continue these steps along the path of rehabilitation. But you don't have anything like that here. You have a transcript, whereas the government points out the RDPA is very much an afterthought. Just pointing out, it turns out erroneously, hey, there's a drug program. If you can get into it, you might be able to cut 12 months off this. No, that's right. As an encouragement to rehabilitation. Well, it's certainly an incentive that the District Court points out. You're right that this isn't a clear-cut record where the judge basically puts it in the terms that would easily be reversible error. But I still think that there's an element of reliance on it. Because the judge clearly is struggling with the offense itself, your criminal history are so bad that I can't think about not meeting that statutory maximum. They are pretty bad, actually, Mr. Henderson. I mean, Mr. Martinez, I mean, TAMS did him no favors, I understand that. A lot of things were wrong. But it's not a great record. Yeah. Including the conduct in this very case is mighty serious. It certainly is. And one of the primary arguments in mitigation had to do with why was Mr. Martinez in that situation? Why didn't he learn his lesson after 25 years in prison? And we feel like the District Court didn't address that concern. Well, nobody knows why he wouldn't have learned his lesson shooting twice the same circumstances. We thought it was a rival gang, police cars. I mean, this is, it's unbelievable that he Well, I don't think it's unbelievable. I mean, certainly you have to, the nature of the offense That's assuming you want to buy into all the academic writings, you want to buy Judge Weinstein's sentence. I mean, that's going pretty far afield to try to bring down the fact that he pulled guns on police officers and shot into the car. Well, he didn't shoot into the car, just to be clear. There was a brandishing, certainly. Oh, I think Judge Kaney's saying that in the past he killed that 13-year-old girl. Yes, right. That's in Bill's criminal history. Didn't he kill the 13-year-old girl? Yes, that's right. I mean, the facts in this thing, as Judge Wood pointed out, it's unbelievable that your client believes he could get or reduce any reduction. But I know you're representing him, so. He got three months off, right? The judge, instead of giving him the 120, gave him 117. That's right. It's a signal, I think, that maybe there's something redeemable in you. Yeah, and I suppose I should clarify, we're not attacking the substance of the sentence here. What we're bothered by is, we feel at least, there were two solid arguments in mitigation about, one, why he's in this situation to begin with, why he hasn't learned his lesson. And, two, about the strength of deterrence in terms of, you know. If it all comes down, it's not my fault. Oh, no, I don't think that's true at all. Well, Tams made me do what I did. No, well, I think that if the district judge had construed the argument that way, that might be an adequate response to say, look, I understand what you're saying. Tams was terrible for you, but that just doesn't excuse this here. But what the district court did instead was it said, well, it was really your fault that you were subject to those conditions. And anyway, I don't think it was that bad. I don't know anything unconstitutional about it. So I want to talk about the deterrence arguments for a minute. I mean, there's a huge academic literature on this, and probably some pretty good data that people pay attention to the certainty of being caught and the certainty of some kind of sentence more than they do durationally, and they have very bad discount functions for time and so on. But it strikes me that these are fundamentally arguments for, number one, Congress, number two, the people who draw up the sentencing guidelines to figure out, you know, where are we going to hit that point where we are, in fact, engaging in some punishment, we're engaging some specific deterrence, and at least in the federal system, general deterrence is still accepted as something that can be done. There's also an academic literature about that that says there actually should never be general deterrence because that's like I'm punishing you, Mr. Henderson, for something that Judge Scudder did, you know, and that seems out of line. But at the moment, these are our rules. Tell me why this isn't fundamentally legislative. Well, so this is a lot like an argument in mitigation before the crack laws were changed where you would make an argument in mitigation and say, look, the 100 to 1 ratio is just unfair. And the response would be, okay, I can consider that argument, but you also might want to persuade Congress. So it's both. It can both be an argument in mitigation and a request to Congress. Well, he didn't just kiss this off. I mean, he listened to the argument and made a decision. Well, he listened to the argument, but he gave a response that wasn't born out of any evidence in the record. He basically pooh-poohed the academic literature. He just said, I don't think that the duration is meaningless. There's some role. He had kind of an equivocal way of putting it. But he essentially says, I think it still plays some role, enough of a role to support the sentence that he chose. Right. Well, and based on his idea that this research really isn't founded on anything other than asking some people. Well, but the thing is, you have a sentencing judge, whom I don't recall how long Judge Chang has been on the bench, versus academic opinion. I think I'll go along many times with what the sentencing judges do, rather than what some academic writing might say about it. Yeah. No, and that's your right as a judge. And that's his right in this case. Right. But what he also needs to do is to actually respond to the argument in a way that's based on the argument that was made and the evidence in support of that argument. If there was evidence contrary, then he could say, look, I see this as a debate. As I look at defendants who come before me, I think that general deterrence does play a role. I see people who come and say, I know this guy got 10 years on a gun case, so I wanted to abstain from that criminal activity. But instead, he just discounts the evidence without any basis for doing so. And that's why we feel that this argument of mitigation was largely ignored. I think he's just saying that general deterrence remains a factor in 3553, notwithstanding the academic studies, Judge Weinstein's point, and that I just can't categorically ignore a consideration of general deterrence. And here, with this particular individual and this course of conduct over the years, he considered it, I think, is the observation that you're hearing up here. Right. No, my reading of the record is he was saying, in this case I think general deterrence applies. Not that it's a factor I have to go through and give great weight to or no weight to, but that in this case I think it applies and we think that the evidence that was presented to him about the literature and in particular deterrence in felon and possession cases, not just generally, merited more of a response. But I'm running out of time, so I appreciate it. Sure. Thank you. All right. Ms. Pillay? Good afternoon. May it please the Court, Shelva Pillay for the United States. The district court did not procedurally err in sentencing the defendant, and as Your Honor has noted, the district court addressed the entire sentence, issued sentence, before even addressing the RDAP program. And in fact, as a result, the district court did not err in making mention of the RDAP. It's true that this defendant did not qualify for the RDAP, but that error is immaterial to the issuance of the sentence in this case. With respect to the mitigation, the district court, again, sufficiently addressed the defendant's mitigation arguments. As Your Honors were just noting, the district court specifically addressed each argument and just simply didn't agree with the defendant's position as to each argument. Well, what he didn't do, and I'm not sure he has to, but he doesn't display any real knowledge about the structure of the studies and so on. I don't think academic studies are worthless, but on the other hand, under 3553A, the district judge is under no obligation to decide that he's going to go with a study as opposed to the guidelines, as opposed to the legislative guidance and so forth. But he makes this kind of offhand comment about the studies, which I think is not particularly accurate, although it may not matter. I think that's fair, Your Honor, but he does, just by summarizing an academic debate, that alone shows that the district court made some effort to address it. And frankly, because the district court is not obligated to do an extensive analysis, particularly here when the district court went below the guidelines, the fact that he addressed it is sufficient in this case. It also matters that at the end of the day, the district court was clear that he was balancing all of the factors, and general deterrence was something that needed to be addressed, pursuant to 3553A, which the district court acknowledged before issuing the sentence, and ultimately addressed the academic debate, didn't agree with it, and ultimately believed that general deterrence should be considered in this particular sentence. And as a whole, even with respect to the efficacy of TAMS, the district court, again, he addressed the defendant's arguments, but ultimately concluded that in balancing the mental health impact, which he did acknowledge on the defendant, with his criminal history and the seriousness of the offense, which Your Honors have acknowledged was considerable, particularly in light of the defendant's criminal history, that he considered all of that in balancing, in issuing the below-guideline sentence in this case. And if there are no additional questions, Your Honors, the government does respectfully request that the defendant's sentence be affirmed. Thank you. All right. Thank you very much. Mr. Henderson, I'll give you a final minute if you'd like it. I'll wait for that. Thank you. All right. Thank you very much, then. The case will be taken under advisement.